```
          IN THE UNITED STATES DISTRICT COURT
         FOR THE NORTHERN DISTRICT OF ILLINOIS
                    EASTERN DIVISION
```

| | |
|---|---|
| **RM ACQUISITION, LLC d/b/a RAND MCNALLY, a Delaware Corporation,**<br><br>     **Plaintiff,**<br><br>  v.<br><br>**ONE20, INC., a Minnesota Corporation and CHRISTIAN SCHENK, Individually and as An Agent for One20, Inc.,**<br><br>     **Defendants.** | **Case No. 17 C 3019**<br><br>**Judge Harry D. Leinenweber** |

## MEMORANDUM OPINION AND ORDER

Plaintiff, RM Acquisition, LLC d/b/a Rand McNally ("Rand McNally"), filed a two-count First Amended Complaint ("FAC") against a competitor, Defendant One20, Inc. ("One20"), and Defendant Christian Schenk ("Schenk"), One20's President and Chief Executive Officer, asserting alternative claims of defamation/negligence (Count I) and defamation/recklessness (Count II). Both counts allege defamation per se and not defamation per quod. Defendants have moved to dismiss pursuant to Rule 12(b)(6), arguing that the statements alleged are not defamation per se or are reasonably capable of an innocent construction.

## I. BACKGROUND

According to the FAC, Rand McNally and One2020 are competitors in the commercial trucking industry. Rand McNally has long been established in the field, while One2020 is a technology startup. The main areas in which they compete include computerized fleet management and compliance systems installed in commercial trucks that provide GPS navigation, mobile communication, electronic logging of hours of service, and other functions to enable transportation companies to manage their fleets and comply with state regulations.

To get its competing business off the ground, One20 launched a free membership program for commercial drivers via an application for Android and Apple devices (the "One20 App"). One20 subsequently began selling a Samsung tablet that it markets as "a tablet for truckers." While the tablet provides GPS navigation and is preloaded with the One20 App, it does not provide the same functionality as Rand McNally's devices, including electronic logging of hours of service.

In January 2017, One20 began publishing and advertising – on its website and its Facebook, Twitter, and LinkedIn pages – what it referred to as its "Trade-up Program." Under this program, a trucker who bought one of One20's tablets and turned in his old Rand McNally device would receive a $100 Visa gift

card. One20's website contained four versions of the advertisement for the Trade-Up Program. These versions are shown in Exhibits 1, 2, 3, and 4 to Defendants' Motion to Dismiss. Two other versions, Exhibits 5 and 6, were published by Defendants on Facebook. Another version, Exhibit 7, was published on Twitter. An article and commentary, Exhibit 8, was published on LinkedIn. At about the same time, four different Twitter "handles" began publishing and republishing Tweets. *See,* Exhibits 9 through 17. Some of these were "fake Tweets" published under stolen identities of individuals who were not the actual authors and had nothing to do with the Tweets. The fake identities are described in paragraphs 14 and 15 of the FAC.

The gist of the statements in Exhibits 1, 2, 10, 11, 12, 13, 14, 15, and 16 is that Rand McNally is going bankrupt and that its customers will be stuck with products without warranties. Exhibits 4, 8, 9, 13, 14, 16, and 17 reference Lynn Tilton, "Distressed Diva," and Patriarch Partners. These advertisements appear to refer to the trials and tribulations of Lynn Tilton, the so-called "Distress Diva," who is CEO of Patriarch Partners, the owner of Rand McNally, and is apparently having problems with the SEC. *See,* https://en.wikipedia.org/wiki/Lynn-Tiuton#Co (last visited September 12, 2017).

Exhibits 3, 5, 6, and 7 refer to One20 as having "your best interests in mind" and to "the Rand McNally product" as "old," "outdated," "junk," and "can't connect to favorite apps."

Defendants take the position that these comments are not defamatory per se because they do not fit into any of the per se categories, are reasonably capable of innocent construction, and don't claim to be in possession of objectively verifiable facts. On the other hand, Rand McNally argues that Defendants' efforts to sanitize One20's advertisements ignore the natural and obvious meaning by taking specific phrases in isolation and out of context. By any reasonable measure, the advertisements were purposely designed to convey to Rand McNally's customers that they better take advantage of One20's offer to "trade up" to their devices because Rand McNally is going bankrupt and its customers will be left with "outdated" and "ratty" old devices without recourse.

## II. **DISCUSSION**

The parties do not disagree as to the applicable law. Defamation per se carries a presumption of damages and is an exception to the ordinary tort rule that a plaintiff must plead and prove actual damages. This is so because the harm from the defamation is obvious, apparent, and does not require explanation with extrinsic facts. On the other hand, in cases

of defamation per quod, damages are not presumed and a plaintiff must plead and prove special damages in order to recover. *Brown & Williamson Tobacco Corp. v. Jacobson,* 713 F.2d 262, 267 (7th Cir. 1983); *Tuite v. Corbitt,* 224 Ill.2d 490, 501 (2006). More innocuous statements not defamatory on their face only impact a smaller group of readers who have knowledge of facts that make the statements defamatory.

In Illinois there are five categories of defamation per se, of which two are applicable to this case: (1) statements that suggest malfeasance or misfeasance in performing one's job, and (2) statements to the effect that the subject is unfit to pursue his trade or profession, *i.e.*, an attack on its business reputation. *Haynes v. Alfred A. Knopf, Inc.,* 8 F.3d 1222, 1226 (7th Cir. 1993); *Pippen v. NBCUniversal Media, LLC,* 734 F.3d 610, 613 (7th Cir. 2013). While these two categories are similar, the distinction is *that the former implies on-the-job malfeasance whereas the latter covers lack of ability to perform one's trade or profession. Id.* The standard for proof is the same for corporate plaintiffs as for individuals. *Jacobson*, 713 F.2d at 269.

Several rules of construction apply to defamation per se. Recovery is not allowed if the statement can reasonably be given an "innocent construction." *Anderson v. Vanden Dorpel,* 172

Ill.2d 399, 412 (1996). In applying the innocent construction rule, the court evaluates the statements "stripped of innuendo and in the best possible light." *Makis v. Area Publications Corp.,* 395 N.E.2d 1185, 1189 (Ill. App. 1979) (citations omitted). The relative value of competing constructions is not weighed, but any "reasonable" non-defamatory interpretation is adopted. However, a court need not "strain" to interpret allegedly defamatory words in their mildest and most inoffensive sense in a quest to find them non-defamatory. *Giant Screen Sports v. Canadian Imperial Bank Of Commerce,* 553 F.3d 527, 533 (7th Cir. 2009). Whether a statement is within a per se category is a question of law for the court. *Lott v. Levitt*, 556 F.3d 564, 568 (7th Cir. 2009).

We now apply these rules to the facts of this case. Rand McNally argues that the statements alleging that it is going bankrupt and will therefore leave its customers "stuck without a warranty," with "out dated" and "ratty" devices, can only be interpreted as imputing to Rand McNally an inability to continue to provide services and products to its customers. Such statements made by Defendants impugn Rand McNally's business reputation and therefore are defamatory per se.

Defendants, on the other hand, argue that statements suggestive of bankruptcy "are not actionable per se" because

there are many reasons that may place a business into bankruptcy. As authority for this contention, they cite *Pippen, supra*, and *In re Dawson,* No 12 C 2089, 2012 WL 3067867, at *6 (C.D. Ill. July 27, 2012). Defendants contend that these cases have adopted a "per se" rule that suggestions of bankruptcy are not defamatory per se.

In deciding whether there is a reasonable innocent construction of Defendants' suggestions of Rand McNally's imminent bankruptcy, it is important to consider the context of Defendants' statements because it differs from the contexts in *Pippen* and *Dawson.* In both cases, the courts found that a suggestion of bankruptcy would not affect the ability of either plaintiff to pursue his or her trade or profession. The court in *Pippen* noted that the plaintiff was employed as a goodwill ambassador for the Chicago Bulls, a basketball analyst, and a celebrity product endorser. A statement that he was bankrupt did not imply that he lacked the competence or integrity to perform any of those jobs. The plaintiff in *Dawson* was a hairdresser, and the court felt that a personal bankruptcy would not affect the public's view of her abilities as a cosmetician and as a hairdresser. (It should also be noted that the plaintiff in *Dawson* had in fact filed for bankruptcy and was therefore subject to a defense of truth as well as innocent

construction.) Had Pippen and Dawson been investment counselors, the result might well have been different.

However, as Rand McNally argues, the suggestion of bankruptcy and the suggestion of the inability of Rand McNally to honor its warranties go directly to its ability to remain in business and continue to provide services and products to its customers. Thus, it is clear that the suggestions of bankruptcy are defamation per se as they go directly to impugn its business reputation. Defendants' Motion is accordingly denied as to the advertisements shown in Exhibits 1, 2, 10, 11, 12, and 15.

On the other hand, the Motion is granted as to the remaining advertisements and Tweets because they require extrinsic facts to make them defamatory or otherwise constitute rhetorical hyperbole. Specifically, Exhibits 4, 8, 9, 13, 14, 16, and 17 all reference Lynn Tilton and Patriarch Partners. That Patriarch Partners is the owner of Rand McNally and its CEO is Lynn Tilton are undoubtedly facts known only to a few insiders involved in the commercial trucking industry. The connection between Patriarch Partners, Tilton, and Rand McNally is therefore are extrinsic facts that are necessary to understand the significance of these advertisements. Thus, they are not defamatory per se. The Motion is granted without

prejudice as to these advertisements shown in Exhibits 4, 8, 9, 13, 14, 16, and 17.

The remaining advertisements that refer to One20 as having "your best interests in mind" and to "the Rand McNally product" as "outdated," "junk," and "can't connect to favorite apps" are mere statements of opinion and rhetorical hyperbole protected by the First Amendment. *Madison v. Frazier,* 539 F.3d 646, 654 (7th Cir. 2008). Therefore, the Motion is granted as to Exhibits 3, 5, 6, and 7 with prejudice.

### III. CONCLUSION

For the reasons stated herein, Defendants' Motion to Dismiss [ECF No. 17] is denied as to Exhibits 1, 2, 10, 11, 12, and 15. The Motion is granted without prejudice as to Exhibits 4, 8, 9, 13, 14, 16, and 17. The Motion is granted with prejudice as to Exhibits 3, 5, 6, and 7.

**IT IS SO ORDERED.**

Harry D. Leinenweber, Judge
United States District Court

Dated: September 18, 2017